Elliott Lydell DAVIS, Appellant–
Respondent,

v.

Karla Kay KNAFEL, Appellee–
Petitioner.

No. 49A02–0503–JV–257.

Court of Appeals of Indiana.

Nov. 22, 2005.

Monty K. Woolsey, Nancy C. Cross, Franklin I. Miroff, Miroff, Cross & Woolsey, Indianapolis, for Appellant.

Roger A. Young, Young and Young, Franklin, for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Elliott Lydell Davis[1] appeals the trial court's order granting appellee-petitioner Karla Kay Knafel's motion to modify child support. Specifically, Davis contends that the trial court erred in increasing child support for T.D., the parties' minor child, from $760 per week to $2,308 per week. Finding that there have not been changed circumstances so substantial and continuing as to make the terms of the original child support order unreasonable, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

*FACTS*

T.D. was born to Knafel and Davis, who were never married, on February 22, 2000. However, the name of Knafel's current husband was placed on T.D.'s birth certificate as the father. On July 2, 2001, an agreed paternity decree resulted in the determination that Davis was the biological and legal father of T.D. Knafel was given custody of T.D. Davis's weekly income at the time as an NBA player was $121,327, and Knafel's weekly income was $450. The Indiana Child Support Guidelines yielded the sum of $758 per week in child support payments, and the parties agreed that Davis would pay $760 per week.

On March 21, 2003, Knafel filed a petition to modify child support. The petition alleged a substantial change in circumstances since the entry of the decree that made its continued operation unreasonable, namely, Davis's income had increased substantially—from $6,309,004 annually to $9,061,875 for the 2003–04 season and $10,068,750 for the 2004–05 season. Ten percent of Davis's income is withheld from him and paid to the NBA.

The trial court held a hearing on the petition on November 29, 2004. Knafel submitted worksheets that indicated that her income was $206 per week. On January 6, 2005, the second day of the hearing, Knafel testified on cross-examination that her income was approximately $750 per week. Knafel further testified that she and her husband own one 6,000 square foot house in Greenwood, which they purchased for $403,000. Knafel described her residence as "a normal house" rather than the

---

1. Basketball fans will know the Appellant better as Dale Davis, who played with the Indiana Pacers for ten seasons. Davis is currently playing for the Detroit Pistons. *See* *NBA.com* at http://www.nba. com/playerfile/dale_davis/bio .html (last visited October 18, 2005).

"million dollar home" that "Dale's son should be living in." Tr. p. 138.

From testimony elicited at the deposition and at the hearing, Davis acknowledged having a daughter for whom he voluntarily pays child support of $855 per week. Davis's financial declaration shows monthly expenses of approximately $80,000, excluding monthly taxes in the approximate amount of $293,747.25. Davis owns three homes, one of which he purchased during the pendency of this petition that is valued at $1,700,000.

Davis has no set parenting time schedule with T.D., and he exercises overnight parenting time with T.D. approximately four or five times each year. It was undisputed that Davis was current on his previously-ordered child support payments and that T.D.'s needs were being met. But Knafel testified that she wanted T.D. to have the kind of lifestyle that he would have if he lived with Davis, for example, by attending private school, going on more vacations, and wearing nicer clothes.

On March 4, 2005, the trial court entered its findings of fact, conclusions of law, and judgment in favor of Knafel. The trial court ordered that Davis's child support obligation should be increased from $760 per week to $2,308 per week, retroactive to March 21, 2003, and that Davis should pay Knafel's attorney's fees. In its findings, the trial court acknowledged that the application of the Child Support Guidelines would increase Davis's child support payment by only $7.15 per week, but deviation from the Child Support Guidelines was necessary in order to "achieve the goal of providing [T.D.] with a standard of living that he would have enjoyed had his parents been married and the marriage remained in tact [sic]." Appellant's App. p. 33. Davis now appeals.

## DISCUSSION AND DECISION

Davis contends that the trial court erred in increasing his child support obligation from $760 per week to $2,308 per week. Specifically, he argues that there was no substantial and continuing change of circumstances that warranted the increase in child support.

■ Generally, decisions regarding child support are left to the sound discretion of the trial court. On appeal, we will not disturb a trial court's order modifying child support unless the trial court abused its discretion or erred as a matter of law. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind.Ct.App.2002). "Therefore, '[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.'" *Bettencourt v. Ford*, 822 N.E.2d 989, 997 (Ind.Ct.App. 2005) (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind.2002)).

Where, as here, the trial court enters findings of fact and conclusions thereon, we consider whether the evidence supports the findings and whether the findings support the judgment. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.*

■ Initially, we address Knafel's contention that Davis's argument is waived for failing to present it to the trial court. Knafel asserts that Davis did not advance the argument that his increase in income did not amount to a substantial and continuing change in circumstances and that

"this case was tried on the issue of whether or not, in determining the amount of support that [Davis] should pay, the Trial Court should deviate from the formula set forth in paragraph 2 of the Commentary to Child.Supp. G.3(D)." Appellant's Br. p. 6.

■ The petitioner has the burden of proof in child support modification cases, *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind.2005), and the record reveals that Knafel directed her arguments to the issue of whether the trial court should deviate from the Child Support Guidelines. Appellant's App. p. 88–91, 109–12, 114. Davis defended against this argument. He was not required to respond to arguments that Knafel did not make.

Modification of child support orders is controlled by Indiana Code section 31–14–11–8, and it states:

A support order may be modified or revoked upon a showing:

(1) of a substantial change in circumstances that makes the terms unreasonable; or

(2) that:

(A) a person has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the support order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

As the trial court found in its order, the difference in child support under the Guidelines is only $7.15—a one percent increase. Thus, the only way that the trial court had legal authority to modify Davis's support obligation is by finding a change of circumstances so substantial and continuing as to make the terms unreasonable. This is a mixed question of law and fact, and to the extent that it is a question of law, it is our duty to give it de novo review, promoting the values of consistency, predictability, and enunciation of standards that curb arbitrariness. *MacLafferty*, 829 N.E.2d at 941.

In *MacLafferty*, Father, the non-custodial parent, petitioned for a reduction in his support obligation based solely on an increase in Mother's income, which would have produced only a fourteen percent decrease in child support payments. Our Supreme Court found that, generally, a change in income that changes support payments by less than twenty percent standing alone would not constitute a substantial and continuing change in circumstances. *Id.* at 942. But our Supreme Court stopped short of holding that a modification could "never be made under subsection (1) where the changed circumstance alleged is a change in one parent's income that only changes one parent's payment by less than 20%." *Id.* The *MacLafferty* Court found that there might be situations where a variety of factors converge to make such a modification permissible under the terms of the statute. *Id.*

■ The only changed circumstance alleged by Knafel was Davis's increased income. Appellant's App. p. 52. Our review of the transcript shows that the only changed circumstance that Knafel argued before the trial court was Davis's increased income. Tr.p. 77, 81–85. Knafel asserts that the trial court found several other factors, but none of them appear to be applicable here. First, Knafel contends that T.D.'s standard of living would be different "if the parents were married and the marriage had remained intact." Ap-

pellant's App. p. 11. This argument is derivative of Indiana Code section 31–14–11–2,[2] which state in relevant part:

(a) The court may order either or both parents to pay any reasonable amount for child support after considering all relevant factors, including the following:

. . .

(2) The standard of living the child would have enjoyed had the parents been married and remained married to each other.

But Knafel has made no showing that anything has changed in the relationship of the parties between the date of the original order and the date of the modification that would make the consideration of this factor different now than in 2001. Thus, we cannot say that this constitutes a change of circumstances.

■ Knafel also asserts that Davis had a change in lifestyle. As evidence, she points to the lone fact that Davis purchased a $1,700,000 residence. But she fails to show how this is a change in lifestyle for a man who already owned two homes in two different states and who earns several million dollars per year. Davis Depo. tr. p. 20–25.

■ Knafel further contends that Davis's voluntary support of his daughter and his lack of contact with T.D. are changed circumstances. But Davis's daughter is older than T.D., and he has been voluntarily paying her support all along. Tr. p. 156; Davis Depo. tr. p. 14. And Knafel introduced no evidence that Davis previously had more contact with T.D. than he has now. In sum, the record does not demonstrate that either of these fac-

tors has changed since the original order was issued.

■ Finally, Knafel asserts that T.D.'s age and developing educational needs are changed circumstances. We note that Indiana Code section 31–16–6–1 takes the child's education needs into consideration in making the initial child support order, and there is no evidence that, at the age of five, T.D.'s educational needs have changed substantially since the original child support order was made. Nor do we find in the record any evidence that T.D.'s needs have changed substantially with his age. In short, we cannot see that there have been any substantial changes in circumstances apart from Davis's income.

■ At this point, the argument seems like a slam dunk for Davis. But Knafel attempts a block by pointing out that *MacLafferty* is distinguishable on its facts. While we acknowledge that *MacLafferty* involved a noncustodial parent requesting a reduction in child support and the present case involves a custodial parent requesting an increase in child support, the reasoning of the *MacLafferty* Court applies equally here. It would vitiate Subsection (2) of Indiana Code section 31–16–8–1 to hold that a change in income that results in less than a twenty percent difference in child support without other converging factors is sufficient to modify a parent's obligation. *See MacLafferty*, 829 N.E.2d at 942. It is of no moment who requests the modification. Based on our reading of binding Supreme Court precedent, we therefore find that the trial court erred in modifying Davis's child support obligation when the only changed circumstance was his increased income that resulted in less than a twenty percent in-

2. Knafel actually cites to Indiana Code section 31–16–6–1 in her brief, but that section of the Indiana Code relates to child support orders in actions for dissolution of marriage. The parties here were never married, so that statute is inapplicable to the case at hand.

crease in his child support obligation under the Child Support Guidelines.

■ As a final matter, Knafel requests an order for appellate attorney's fees. Indiana Code 31–14–18–2 permits the trial court to order a party to pay attorney fees in paternity actions. While no published case has extended this rule to modification of child support stemming from a paternity action, we can see no reason why it should not apply in cases such as this. In making such an award, the trial court should consider the parties' resources, their economic conditions, and their respective ability to earn an adequate income through employment. *In re Paternity of A.J.R.,* 702 N.E.2d 355, 363 (Ind.Ct.App.1998). Upon remand, the trial court should consider whether it is proper to award Knafel appellate attorney's fees in these circumstances.

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

RILEY, J., concurs.

MATHIAS, J., dissents with opinion.

MATHIAS, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the trial court erred in modifying Davis's child support obligation. I agree with the majority's recognition of the importance of *MacLafferty.* However, I disagree with the majority's interpretation of that case.

In *MacLafferty,* the trial court granted Father's request to decrease his weekly child support obligation because Mother obtained full-time employment and her income more than doubled. However, Mother's income increased from only $16,848 to $36,868 per year, while Father's income, minus any bonus compensation, increased from $118,924 to $125,164. *Id.* at 939.

Our supreme court reversed the trial court's order and noted that even with the increase in her income, "Mother's income was quite modest compared to Father's: Father's income (excluding bonuses) was approximately 3–1/4 times that of Mother. We hold that the change alleged here was not so substantial as to render the terms of the prior order unreasonable." *Id.* at 942.

Concerning the issues presented in this appeal, the *MacLafferty* court indicated that in most cases, a change in income will generally not justify a modification of child support under Indiana Code section 31–16–8–1(1), which requires a showing of "changed circumstances so substantial and continuing as to make the terms unreasonable." However, and most importantly regarding the case before us, the court also stated, "we do not hold that a modification may never be made under subsection (1) where the changed circumstances alleged is a change in one parent's income that only changes one parent's payment by less than 20%. There may be situations where a variety of factors converge to make such a modification permissible under the terms of the statute. While we do not find this case to be such a situation, we do not foreclose such a possibility." *Id.*

The focus of child support, whether pertaining to a child born within a marriage or out of wedlock, has always been to assure the child of a standard of living approaching the lifestyle the child would have enjoyed had his or her parents been and remained married through his or her minority. *See* Ind.Code § 31–14–11–2 (1998 & Supp.2005) (The paternity child support standard clearly focuses on "the standard of living the child would have enjoyed had the parents been married and remained married to each other.").

Davis was a well-paid professional athlete when T.D. was born and the lifestyle

T.D. would have enjoyed had Davis and Knafel been and remained married throughout T.D.'s minority is beyond even the imagination of most Hoosiers. Yet that standard of living, along with Knafel's financial resources, T.D.'s physical and mental condition, T.D.'s educational needs, and Davis's financial resources and needs are the criteria the General Assembly has established for calculating child support. *See* Ind.Code § 31–14–11–2.

Since the original agreed order in paternity and agreed child support order, Davis's income has increased by 43.5 percent. His current annual income is $10,068,750. Due to the majority's reversal of the child support modification, Davis's child support obligation will return to $760 per week, or $39,520 per year, which is substantially less than one-half of one percent (.39 percent) of Davis's current annual income.[3] Mother earns less than $40,000 per year.

In light of the statutory criteria established in Indiana Code section 31–14–11–2, the vast disparity in the parties' incomes, and the more than forty percent increase in Davis's income since the entry of the original support order, I believe that the circumstances presented here create precisely the situation contemplated in *MacLafferty*, where a change in income is sufficient to support a modification under subsections one of Indiana Code sections 31–16–8–1 or 31–14–11–8. Moreover, as the trial court noted, given Davis's considerable income and the substantial increase in his income over the last few years, his standard of living is well above that which is enjoyed by his child, T.D. Accordingly, I agree with the trial court's conclusion that "an increase in [Davis's] income in the amount of $2,752,870.60 per year is a substantial change in circumstances ... [and]

the existing support order of $760 per week is clearly unreasonable." *See* Appellant's App. p. 30. I believe to conclude otherwise betrays the underlying equitable intent of child support in Indiana and sends the wrong message to parents like Mr. Davis about the ongoing obligations they should expect regarding their children.

---

**3.** The modified support obligation of $2308 per week, or $120,016 per year, amounts to just 1.19 percent of Davis's current annual income.