## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 15 2016, 6:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Samantha Kelley
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of A.I., | June 15, 2016 |
| Sandrella Windham, a.k.a. Samantha Kelley, | Court of Appeals Case No. 49A04-1507-JP-773 |
| *Appellant-Respondent,* | Appeal from the Marion Circuit Court |
| v. | The Honorable Sheryl Lynch, Judge The Honorable Tamara L. McMillian, Magistrate |
| Kenneth Ivy, | Trial Court Cause No. 49C01-0608-JP-32116 |
| *Appellee-Petitioner.* | |

**Kirsch, Judge.**

[1] Sandrella Windham, a.k.a. Samantha Kelley ("Mother"), filed a motion to modify the child support obligation of Kenneth Ivy ("Father") for the parties' minor child. Mother appeals the trial court's order modifying Father's child

support obligation and raises several issues, of which we find the following to be dispositive: Whether the trial court abused its discretion when it ordered that Father was no longer required to pay child support.

[2] We affirm.

## Facts and Procedural History

[3] Mother and Father are the biological parents of one child ("Child"), born in 2003. In 2006, Father petitioned to establish paternity of Child, and in 2007, the trial court issued a Judgment of Paternity and Support ("the Judgment"), which established paternity in Father. The Judgment reflected a weekly child support calculation of $99.00 per week, but the trial court deviated from that amount by applying a credit to Father for social security benefits that Child received from Father, resulting in a child support obligation of $33.00 per week.[1] *Appellant's App*. at 10. Under the Judgment, Father also was responsible for providing the medical and dental insurance on Child. In 2010, Mother left the state of Indiana with Child, but returned in 2014. In September 2014, Mother filed a Verified Petition for Modification of Child Support ("Petition"),[2] and in February 2015, the trial court held a hearing on the matter. Both Mother and Father appeared in person, but neither party was represented by counsel.

---

[1] The Judgment is not included in the record before us, and we extrapolate the facts and amounts from the trial court's order in this case, as well at the parties' testimony.

[2] The Petition is not included in the record before us.

[4]    At the hearing, Mother testified that she and Father both are military retirees and that both of them receive Social Security disability payments and Department of Veterans Affairs ("V.A.") disability payments. She provided the trial court with a January 2014 Social Security disability document, which was admitted into evidence, and it reflected her monthly disability payment as $895.00 per month. *Resp't's Ex*. A. Mother asserted that Father's income "is higher than mine," noting that he receives monthly military retirement payments. *Tr*. at 5. She estimated that her total monthly income was near $4,000.00 and that Father's was between $5,000.00 and $6,000.00. *Id*. at 5-6, 11. Mother testified that there were no childcare-related expenses, but that Child, who was in fifth grade at the time of the hearing, had been diagnosed with dyslexia and had recently started attending a learning institution that provided a teaching style suited for dyslexic children. Tuition to attend the school was $350.00 per month, and Mother testified that she and Father each had been paying $175.00. As for parenting time, Mother stated that Father generally spent three to four overnights with Child per month. Mother testified that Father "will buy some clothing" for Child and that he gives Child gifts for her birthdays and "does help with the extra-curricular things," but he "is not held to do those things." *Id*. at 6. Mother acknowledged that, although Father "does the extra and pays [] one fifty-three a month," he was not under any legal obligation to do so, and, she stated, "I want him [to have] a monthly obligation

that . . . whatever could happen, he still has to pay that set amount[.]"[3]  *Id.* at 6-7.

[5]     Father also testified, initially advising the trial court that, some years prior, he had filed a petition for contempt because Mother "disappeared and did not let the courts know" and that he spent thousands of dollars "to find her," which took six months or so.  *Id.* at 15.  He stated that after he located Mother and Child in Colorado, he spent $7,000.00 on flights, hotel, car rental, and meals over the years in order to exercise parenting time with Child.  Father disputed the income figures that Mother presented for herself at the hearing, asserting that her income was "much higher" than she was claiming.  *Id.* at 9.

[6]     As to his own income, Father testified as to the amounts he was receiving in Social Security disability benefits, V.A. disability benefits, and military retirement benefits.  Father provided a summary of the figures to the court, which was admitted into evidence.  *Pet'r's Ex.* 1.  Father testified that he was paying $153.00 in child support for Child, and that, in addition, Child received $724.30 per month through Social Security as a result of Father's disability.  Father testified that he pays $118.00 per month in health care for Child and $60.00 per month for dental insurance.  Father stated that he pays "all the co-pays" for Child's ophthalmology visits and glasses and asserted that Mother

---

[3] From the record before us, it appears that Mother did not provide the trial court with a proposed child support worksheet.  As we have neither the Petition seeking modification of child support, nor a proposed support worksheet, we have only Mother's testimony as evidence of her requested amount of child support.

"doesn't pay anything." *Tr.* at 19-20. He stated that he was on a payment plan for what was not covered by insurance for Child's $7,000.00 orthodontic bills. *Id.* In addition to paying half of Child's $350.00 per month tuition, he added that "I do all her books for school. I do all her uniforms." *Id.* at 20. Father told the court that after Mother and Child returned to Indiana in 2014, he generally had Child three to four overnights per week, contrary to Mother's testimony. *Id.* Father noted to the court that he had a child support obligation for a prior-born child and that, in addition, $735.29 was deducted from his military retirement and paid to a prior wife as "alimony." *Id.* at 24.

[7] The trial court took the matter under advisement, and in April 2015, it issued an order ("Order"), finding in part, as follows:

> 23. Court finds that Father had a substantial and continuous change of circumstances of prior weekly support order of $33.00; the prior order was issued more than twelve (12) months prior; and Father's current child support calculation is more than a 20% difference from the prior order.

> 24. Court finds that Father should not pay any weekly child support for Child. Court deviates from the Child Support Obligation Worksheet calculation that Father's weekly child support is now two dollars ($2.00) per week due to it being in the child's best interest and Father's voluntary payments toward Child's educational needs.

*Appellant's App.* at 11. Mother now appeals.

## Discussion and Decision

[8] Initially, we observe that Father did not file an appellee's brief. We will not undertake the burden of developing arguments for the appellee. *In re Paternity of E.C.*, 896 N.E.2d 923, 924 (Ind. Ct. App. 2008). Applying a less stringent standard of review, we may reverse the trial court if the appellant establishes prima facie error. *Id.* Prima facie error is defined as at first sight, on first appearance, or on the face of it. *Id.*

[9] A trial court's calculation of child support is presumptively valid. *Bogner v. Bogner,* 29 N.E.3d 733, 738 (Ind. 2015). On appeal, we will not disturb a trial court's order modifying child support unless the trial court abused its discretion. *In re E.C.*, 896 N.E.2d at 924; *Davis v. Knafel*, 837 N.E.2d 585, 587 (Ind. Ct. App. 2005), *trans. denied.* We consider the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom, and we do not reweigh evidence or reassess the credibility of witnesses. *In re E.C.*, 896 N.E.2d at 924. It is not enough that the evidence might support some other conclusion; rather, it must positively require the conclusion contended for by appellant before there is a basis for reversal. *Davis*, 837 N.E.2d at 587.

[10] Pursuant to Indiana Code section 31-16-8-1,[4] child support obligations may be modified only:

---

[4] *See* Ind. Code 31-14-11-2.3 ("A child support order issued under [the paternity support] chapter is subject to the provisions in IC 31-16-6 through IC 31-16-13.").

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[11] In the present case, the trial court's Order included a child support worksheet that calculated Father's weekly gross income as $1,218.58 ($4,874.32 per month) and Mother's weekly gross income as $929.84 ($3,719.36 per month). The Order determined that Father's child support obligation pursuant to the Guidelines was $2.00 per week, which represented more than a 20% difference from the prior $33.00 per week support order that was issued in 2007. The court further determined that a deviation was justified, and it ordered that Father was not required to pay any weekly child support for Child. Mother maintains that this decision was an abuse of discretion, but we disagree.

[12] At the hearing on Mother's Petition, she testified as to her estimation of each party's income, but presented only one document, dated September 2014, to show her Social Security disability payments, at least at that time. Although she acknowledged that she also received V.A. disability benefits and estimated her total monthly income to be approximately $3,000.00, she presented no

other evidence of her income, and she did not offer a proposed child support worksheet. Father testified and presented documentation showing the amounts of his V.A. disability benefits, his Social Security disability benefits, and his military retirement pay. He also testified that he pays $153.00 in child support for Child, and he noted that Child receives an additional $724.30 from Social Security relative to Father's disability, a sum that Father asserts Mother did not include in her child support allegations. Father testified to the specific amounts that he pays for Child's medical and dental insurance, as well as another child support obligation for a prior-born child and for a prior alimony or maintenance obligation. He presented a summary of what he believed his income to be, reduced by payments and obligations, as well as another document summarizing what he believed Mother's income to be. *Resp't's Exs.* 1, 2.

[13] Mother argues on appeal that the trial court, in calculating child support, should not have given Father a credit for exercising three overnights with the child per week (or 156 per year). *Appellant's Br.* at 2. Her argument in this regard, however, is merely a request for us to reweigh the evidence. That is, at the hearing, Father testified that, since the time that Mother and Child returned to Indianapolis in 2014, he had been exercising three to four overnights with Child per week, whereas Mother testified that he exercised four to five overnights per month. As we have often recognized, "Trial courts must exercise judgment, particularly as to credibility of witnesses, and we defer to that judgment because the trial court views the evidence firsthand and we review a cold documentary record." *MacLafferty v. MacLafferty*, 829 N.E.2d 938,

941 (Ind. 2005). Given the record before us, it was not an abuse of discretion for the trial court to credit Father with three overnights of parenting time per week.

[14] The remainder of Mother's arguments on appeal consist primarily of general allegations that the trial court's decision was "unethical" and "unprofessional," and that it included "false" statements and that it was in "blatant disregard of the law." *Appellant's Br.* at 2, 5-6. She does not challenge the income figures used by the trial court or contend that its calculations were incorrect. She does not challenge the existence of Father's other child support obligation or his maintenance payment to a prior spouse. In sum, she does not specifically explain or allege in what way the trial court's decision was an abuse of discretion. Accordingly, we find that Mother has failed to meet her burden to establish that the trial court's decision to modify Father's child support obligation was an abuse of discretion.

[15] Affirmed.[5]

---

[5] Mother also raises the issue on appeal that "the trial court committed reversible error and abused its discretion . . . [by] not allowing [Mother] to take her minor child out of the court's jurisdiction 'without a court order.'" *Appellant's Br.* at 1. However, the only pending motion before the trial court was Mother's Petition seeking to modify child support, and the trial court advised the parties on several occasions during the hearing that matters concerning Mother's past relocations or desire to do so in the future were not relevant to the pending motion to modify child support, and such matters would not be heard or decided. *Tr.* at 30, 32-33, 35-36. Although the trial court in its Order reminded both parties of their continuing obligation to report any change of residence to the court, it did not render any decision with regard to any relocation request of either parent. *Appellant's App.* at 12. Accordingly, we do not address Mother's claim that "the trial court committed reversible error and abused its discretion . . . [by] not allowing [Mother] to take her minor child out of the court's jurisdiction[.]" *Appellant's Br.* at 1.

Riley, J., and Pyle, J., concur.

---

Mother also asserts as an issue that "the trial court committed reversible error by not permitting the appellants [sic] material witnesses to enter court and provide exculpatory testimony." *Id.* However, neither Mother's Brief nor the Transcript refer to any such material witnesses who were offered but excluded. Furthermore, Mother's only argument on the issue appears to be: "The Magistrate made a false statement when she stated the hearing was only for the modification of child support. This prevented the appellant from providing exculpatory testimony." *Id.* at 4. Mother has thus waived the issue for failure to make a cogent argument. Ind. Appellate Rule 46(a)(8).